FILED

02/17/2017

Clerk of the
Appellate Courts



IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 10, 2017

## AUSTIN MYLES TOMLIN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**No. 17991PC     Forest A. Durand, Jr., Judge**

_____

**No. M2016-00705-CCA-R3-PC**

_____

The Petitioner, Austin Myles Tomlin, pleaded guilty to two counts of vehicular homicide by intoxication, and the trial court sentenced him to ten years for each count, to be served consecutively. The Petitioner filed a petition for post-conviction relief, which the post-conviction court denied after a hearing. On appeal, the Petitioner contends that the post-conviction court erred when it dismissed his petition because his trial counsel was ineffective for failing to properly advise him regarding his guilty plea. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

M. Wesley Hall IV, Jr., Unionville, Tennessee, for the appellant, Austin Myles Tomlin.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Robert J. Carter, District Attorney General; and Michael D. Randels, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from a car accident involving a car that the Petitioner was driving while intoxicated that resulted in the death of his two passengers. The Petitioner pleaded guilty to two counts of vehicular homicide by intoxication. At the guilty plea hearing, the trial court ensured that the Petitioner understood the rights that he was waiving by entering pleas of guilt, that he understood the range of punishment he faced, that he was satisfied with his representation, and that he desired to enter a guilty plea. The State

recited the following evidence supporting the guilty plea:

> The factual basis is that on August 14, 2014, at a little past 2:30 in the morning, the Communication Center received a 911 call about a single car accident in the area of the intersection of Tate Street and Elm Street here in Shelbyville.
>
> The police department units responded, EMS units responded, and I believe even some fire department personnel responded, and discovered a Ford Mustang essentially embedded in a building. It had obviously struck it. There was a tremendous amount of damage done to the building indicating a high-speed impact.
>
> The [Petitioner] was the driver of the vehicle. He was extricated. Obviously suffering from injuries. He was transported, I believe via ambulance or emergency vehicle, to the old hospital location, which is just up the street on Union Street, where he was then life-flighted to Vanderbilt.
>
> After he was extricated, from the vehicle, officers on the scene detected an odor of alcohol coming from the [Petitioner's] person.
>
> Also in the vehicle were two other occupants, who were unfortunately deceased at the scene. That was Tristin Nichols, who was age 17, and Richard Grijalva, who was age 19.
>
> [A]t Vanderbilt Hospital, blood was drawn. And that was approximately 3:55 a.m., so about an hour and 20 minutes after the crash. That blood was . . . drawn by hospital personnel as part of their medical treatment.
>
> The State then obtained a search warrant, and obtained that sample of blood, and carried it to the Tennessee Bureau of Investigation's crime laboratory, where it was analyzed to determine the alcohol content. And it revealed that the [Petitioner's] blood alcohol in that sample was a .172.
>
> Additionally Lieutenant Trey Clanton, who is a certified crash investigator, an accident reconstructionist with the police department, along with Sergeant Allan Brenneis, and I believe Trooper Hearn of the Tennessee Highway Patrol, were also crash reconstructionists, conducted an investigation.
>
> There was [a] video from one of the stores near there[] that showed

the vehicle -- you could actually see the vehicle on the video. And it appeared to be traveling at an incredibly high rate of speed.

I believe Lieutenant Clanton estimated, based upon his training and experience, it appeared to be traveling approximately 90 miles per hour, very close to the point of impact.

Additionally, Sergeant Brenneis and Trooper Hearn, they went to the scene. And looking at the video, they picked two reference points that the vehicle passed between.

They measured that distance. And then measured the time that it took the vehicle to travel that distance. And then applying a mathematical formula, they came up with an estimated speed of 85 miles per hour.

. . . .

. . . [In that area] [t]here's a curve []. And just it appears that the [Petitioner] just . . . was not able to negotiate the curve and left the roadway and struck this building. So the building is actually on Tate Street.

There's also an air bag module that records a certain amount of data. However, the[] air bag module . . . doesn't record anything.

[T]he maximum speed it recorded was 54 miles per hour. However, the information that comes with the air bag module indicates that it probably does not record the entire event, it just records a certain amount of time before the air bag deploys.

And so probably that 54 miles per hour is in the milliseconds before it struck the building. Which of course it had left the roadway and hit a curb, was traveling on a non-asphalt surface. Presumably, there [was] braking and such. That probably explains why professionals estimated the speed at 85 to 90 miles an hour, and the air bag module shows a different one.

So in other words, that is probably its speed a few milliseconds before it struck the building, it was down to 54 miles per hour, but at other points it was as high as 85 to 90 miles per hour.

Of course, and so that was the alternate theory in the indictment of

3

extreme reckless[ness]. Of course, he's pleading to the intoxication count – or intoxication count of the indictment.

The Petitioner agreed with the State's recitation of the facts, to the extent that he could remember what had happened around the time of the accident. He agreed that all the facts and discovery supported the State's recount of the facts. The State informed the trial court that the Petitioner had a DUI charge pending at the time of the accident in this case. The State further noted that the Petitioner had since pleaded guilty to that offense. The trial court accepted the Petitioner's guilty pleas and ordered that he surrender his driver's license. The trial court entered its order on January 22, 2015.

On July 21, 2015, the Petitioner filed a timely petition for post-conviction relief. In it, he contended that Counsel was ineffective because he never provided to the Petitioner the State's discovery. He said that, had he known about the evidence against him and the law, he would have requested a jury trial and not entered a guilty plea. At the hearing, and on appeal, he has framed his issue with regard to Counsel's advice regarding the potential sentence that he faced if convicted of all the counts against him.

The post-conviction court held a hearing during which the parties presented the following evidence: The Petitioner's post-conviction attorney informed the post-conviction court that Counsel had told the Petitioner that he faced a much greater sentence if he did not accept the sentence offered by the State in exchange for the guilty plea. He informed the trial court that the Petitioner's goal was to "get back to . . . that point where he could plead open and have a sentencing hearing." He said he would like to ask for concurrent sentences rather than the consecutive sentences to which he agreed to as part of the plea negotiation.

Counsel testified that he never told the Petitioner that he could be subject to a sixty-year sentence if convicted at trial. Counsel said that he informed the Petitioner that he faced between eight and twelve years on each charge, and that those charges could run consecutively for a total effective sentence of twenty-four years.

During cross-examination, Counsel agreed that this case involved the death of two passengers in the Petitioner's vehicle and that he faced two counts of vehicular homicide based upon their deaths. Counsel said that he explained to the Petitioner that he was a Range I offender and so, because the charges he faced were B felonies, he faced a sentencing range of eight to twelve years for each charge. He also said he explained the alternate theory of vehicular homicide based upon extreme recklessness, which was a C felony with an applicable sentencing range of three to six years. Counsel also said he explained how, if the Petitioner was convicted of all the counts against him, some of those counts would merge because they were alternate theories of the same crime.

4

Counsel said the Petitioner appeared to understand his explanations of the charges and potential sentences.

Counsel testified that he interviewed the EMS responders and the police officers. Everyone agreed that the Petitioner was driving the vehicle, and the blood test showed that his blood alcohol level was .16. Counsel said that the Petitioner agreed to enter a guilty plea in exchange for a twenty-year sentence, to be served at 30%. Counsel testified that the State's first offer was two consecutive eleven-year sentences. The Petitioner wanted two consecutive eight-year sentences, but the State would not agree, and the parties agreed to two consecutive ten-year sentences. Counsel said that he explained to the Petitioner that he could accept the sentence or "plea open," meaning he could admit guilt and allow the trial court to set his sentence. Counsel also explained to the Petitioner that he could also take his case to trial. Counsel said he explained both consecutive and concurrent sentencing to the Petitioner. Counsel said the Petitioner "totally understood" his options and his sentence exposure, and, knowing these, the Petitioner chose to enter a guilty plea.

During redirect examination, Counsel said that he explained to the Petitioner that, based on the Petitioner's blood alcohol level, his pending DUI, and that two people lost their lives, Counsel did not believe that the trial court would order concurrent sentences.

Upon questioning by the post-conviction court, Counsel testified that the Petitioner had a pending DUI at the time of the accident in this case. He also had a public intoxication conviction from 2013. The DUI and public intoxication were two separate events in separate counties.

Miranda Rhodig, the Petitioner's mother, testified that she was present at every meeting between Counsel and the Petitioner. She said that Counsel explained the range of punishment. Counsel told them that the Petitioner faced between sixteen and twenty-four years, based upon his sentencing range of eight to twelve years, and that his sentence would be served at 30%. She said she was unsure whether the Petitioner was present for this discussion but that he was "with [her] all the time." She said that sixty years never "came into her mind" and that she believed it also never came into the Petitioner's mind. She said, "I'm not really sure where all that's coming from."

The Petitioner testified that Counsel had explained the sentencing ranges to him but that, also, at one point, Counsel told him to sign a piece of paper indicating that he accepted the sentences totaling twenty years. At that point, Counsel said, "Make sure you sign this, because if you don't you get up to 60 years." The Petitioner said that he did not want a sixty-year sentence, so he agreed to the twenty-year sentence. The Petitioner said that, when he went to prison, he learned that he could not have received a

5

sixty-year sentence, so he filed his post-conviction petition. The Petitioner admitted that he committed this crime but said he was seeking a chance to argue for concurrent sentencing. He said the only reason he agreed to the sentence was because Counsel mentioned sixty years as a potential sentence.

The Petitioner explained that he was overwhelmed the day he signed the plea. He said that, at the same time, he was signing his divorce papers and had a lot on his mind. It was also the day before his birthday, which contributed to the overwhelming nature of the event.

During cross-examination, the Petitioner said that he felt that Counsel's explanation of his potential sentence was very confusing. He said that he repeatedly asked his mother what was going on. The Petitioner said that his mother would go and see Counsel without him and that Counsel must have explained the sentence to her when he was not present. The Petitioner said that Counsel mentioned sixty years as a potential sentence "a couple of times."

After the hearing, the trial court entered an order denying the Petitioner's petition for post-conviction relief. It found:

> It appears from the hearing, though not specifically pled, the thrust of [the] Petitioner's grievance against counsel is the issue of being consecutively sentenced for two (2) counts of vehicular homicide.
>
> . . . .
>
> Herein, there is no arguable question the Petitioner is a dangerous offender who engaged in conduct without regard for the foreseeable consequences [so as to justify his consecutive sentences]. Driving approximately 90 mph in a 30 mph zone, particularly while one is intoxicated to the point reflected on his BAC level warrants being classified as a dangerous offender. This conduct resulted in the deaths of two other persons. It is probably [the] Petitioner's BAC was even higher given the passage of an hour and a half or so between the accident and the blood draw.
>
> Next it must be determined whether the sentences in this case are reasonably related to the severity of the offense and whether they are necessary to protect society from further criminal conduct on the part of the Petitioner. Herein two other persons lost their life, which is directly attributed to the conduct of the Petitioner. Additionally, while the

Petitioner's prior criminal history does not appear to be extensive, it is suggestive of a pattern of substance abuse and poor judgment. He had a public intoxication conviction in 2013 and had a DUI pending in Rutherford County at the time of this event with a conviction date of October 10, 2014, as the court understood [Counsel's] testimony. Apparently, [the] Petitioner learned nothing from either of these separate incidents. In fact what is disturbing is [the] Petitioner was out on bond for the Rutherford County DUI when this event happened. The court believes, indeed, the length of the sentence reasonably relates to the severity of the offense (loss of two lives) and that society needs protection from an individual who apparently had not learned his lesson about drinking and driving.

Based upon the forgoing, there is nothing in the record suggesting [Counsel's] advice regarding possible sentences was outside the range of competence of attorney practicing criminal law. There is nothing in the record which shows the Petitioner's plea was anything but knowingly, voluntarily and intelligently made. A review of over 30 pages of the transcript of the plea acceptance hearing demonstrates the court explained in detail the law and his rights as it applied to his case to the Petitioner. There was nothing shown to be ineffective about [Counsel's] representation or advice. Since the burden is on the Petitioner to prove his allegations by clear and convincing evidence, he has failed to do so. Consequently, the Petitioner[']s petition for relief of sentence is hereby dismissed.

The Petitioner appeals the post-conviction court's denial of his petition for post-conviction relief.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it denied his petition for post-conviction relief because Counsel did not properly advise him about the law with regard to the potential sentence that he faced if convicted of all the counts against him. He further asserts that, had he realized that he faced a potential sentence of twenty-four years, he would not have entered a guilty plea agreeing to a twenty-year sentence. The State counters that the Petitioner has not met his burden of showing that he received the ineffective assistance of counsel or that his guilty plea was unknowingly and voluntarily entered. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional

right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

8

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

As previously stated, ineffectiveness of counsel in the context of a guilty plea is only relevant to the extent that it effects the voluntariness of the petitioner's guilty plea. To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. *See Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977). A plea meets constitutional muster when the defendant understands both

9

what the plea connotes and its consequences, *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citing *Boykin*, 395 U.S. at 244), and makes a voluntary and intelligent choice from the alternative courses of action available to plead guilty. *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn. 2003) (citing *North Carolina v. Alford*, 400 U.S. 25 (1970)). A petitioner's testimony at a guilty plea hearing "constitute[s] a formidable barrier" in any subsequent collateral proceeding because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

When determining the knowing and voluntary nature of a guilty plea, the standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford,* 400 U.S. at 31 (1970). A reviewing court can look to a number of factors to find a "knowing and intelligent plea," including "[t]he relative intelligence of the petitioner, the degree of his [or her] familiarity with criminal proceedings, the opportunity to confer with competent counsel and the trial court regarding the charges faced, and the desire to avoid a greater punishment resulting from a jury trial." *Blankenship*, 858 S.W.2d at 904. The Petitioner must have an understanding of the charges against him and the consequences of pleading guilty, including "the sentence that he will be forced to serve as the result of his guilty plea and conviction." *Id.* at 905. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Id*. at 904.

In the case under submission, the Petitioner contends that his guilty plea was not knowingly and voluntarily entered because he entered it based upon Counsel's incorrect advice that he faced sixty years of incarceration if he was convicted at trial. At the post-conviction hearing, Counsel testified that he informed the Petitioner that he faced twenty-four years as a maximum potential sentence. The Petitioner's mother, who was present with him at each of his meetings with Counsel, testified that Counsel informed them that the maximum sentence the Petitioner faced was twenty-four years. Counsel said that he informed the Petitioner that he would likely face consecutive sentencing based upon the severity of the offense, the fact that two people were killed in the accident, the facts against him, including the high rate of speed and the high blood alcohol content, and the fact that he had a previous conviction for public intoxication and a pending DUI at the time of the accident. We note that we can discern from the record, it was conceivable that trial counsel's advice was sound based on the "dangerous offender" statutory ground for allowing consecutive sentencing. *See* T.C.A. §40-35-115(b)(4) (2014). The Petitioner wanted the State to offer him two eight-year sentences, to be served at 30%. The State countered with two eleven-year sentences, to be served at 30%. The parties settled on two ten-year sentences, to be served at 30%.

The transcript from the guilty plea hearing reflects that the trial court clearly and methodically informed the Petitioner of his rights, and the Petitioner stated he was

satisfied with Counsel's representation. We conclude that the Petitioner has not met his burden of proof with his bare allegation that, at some point, Counsel mentioned that he faced a sixty-year maximum potential sentence. He concedes that Counsel also told him that he faced a twenty-four-year maximum sentence, his mother testified that Counsel so informed them, and Counsel confirmed that this was his advice to the Petitioner. We conclude that the evidence does not preponderate against the post-conviction court's findings. The Petitioner is not entitled to relief.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE